IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON FULTON,<br><br>                Petitioner,<br><br>     vs.<br><br>ROBERT K. WOODS, Superintendent,<br>Upstate Correctional Facility,<br><br>                Respondent. | No. 9:07-cv-01052-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Jason Fulton, a state prisoner appearing *pro se*, has filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254. Fulton is currently in the custody of the New York Department of Correctional Services, incarcerated at the Upstate Correctional Facility. Respondent has answered, and Fulton has replied.

I. BACKGROUND PRIOR PROCEEDING

      Following a jury trial in the Schenectady County Court, Fulton was convicted of Murder in the Second Degree (N.Y. Penal Law, § 125.25(2)) and Assault in the Third Degree (N.Y. Penal Law, § 120.00(2)). The Schenectady County Court sentenced Fulton to an indeterminate prison term of 22 years to life on the murder conviction and a determinate term of 1 year on the assault conviction, the sentences to be served concurrently. Fulton timely appealed his conviction and sentence to the Appellate Division, Third Department, which affirmed, and the

New York Court of Appeals denied leave to appeal.[1]  Fulton timely filed a Petition for a Writ of *Certiorari* in the Supreme Court, which was denied on November 13, 2006.[2]

On February 16, 2007, Fulton filed a motion in the Schenectady County Court to vacate his conviction under N.Y. Criminal Procedure Law § 440.10.  The Schenectady County Court denied the motion and the Appellate Division denied leave to appeal on July 20, 2007.  Fulton timely filed his Petition for relief in this Court on September 28, 2007, and his Amended Petition on November 23, 2007.

The facts underlying the conviction, as recited by the Appellate Division, are:

> Evidence at trial revealed that Ricci dated [Fulton] for approximately four years and that their relationship ended shortly after a heated exchange two weeks prior to the death of the victim.  During that exchange, [Fulton] threw a lamp at Ricci, grabbed her throat and threw her onto the bed.  When Ricci informed [Fulton] that she no longer wanted to be in a romantic relationship with him, he told her that he might "kill somebody" that he saw with her, although she believed he was joking.  On the night of the victim's death, Ricci, along with the victim and some other friends, went to a bar.  [Fulton] and Mineconzo arrived there and Ricci and [Fulton] exchanged words.  At one point, [Fulton] asked Ricci who the victim was.  She explained that he was "just a friend."  After Ricci left with the victim and went to a friend's house, [Fulton] was overheard telling people that he was going to "kill that . . . kid" and that he was going to "beat his ass."
>
> [Fulton] arrived with Mineconzo at the house of Ricci's friend in an agitated state.  After being rebuffed by an individual who answered the door, they left, only to return later.  According to Mineconzo, they planned to get into a fight with whomever was in the house.  Upon their return, the victim went outside with a bat in hand and Ricci followed shortly thereafter.  The victim took a swing at [Fulton] with the bat and [Fulton] wrestled the bat away from him.  [Fulton] then advanced toward the victim, who was retreating, and struck him in the temple.  After he was knocked to the ground, [Fulton] continued to hit and kick him several more times; Mineconzo assisted in the assault.  Although Ricci attempted

---

[1] *People v. Fulton*, 807 N.Y.S.2d 153 (N.Y.A.D. 2005), *lv. denied*, 859 N.E.2d 976 (N.Y. 2006).

[2] *Fulton v. New York*, 549 U.S. 1037 (2006).

to intervene, she was pushed to the ground by [Fulton]. The victim later died at the hospital and Ricci suffered bodily injuries.

At trial, [Fulton] testified on his own behalf.[FN1] Although he admitted to the assault, he denied that he tried to kill the victim. Convicted of one count of murder in the second degree and one count of assault in the third degree, and sentenced to an aggregate prison term of 22 years to life, he appeals.[3]

> [FN1.] Midway through the trial, Mineconzo pleaded guilty to the crime of attempted assault in the first degree.

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition, Fulton raises two grounds for relief: (1) prosecutorial misconduct and (2) the evidence was insufficient to convict him of depraved indifference murder. Respondent contends the first ground is procedurally barred. Respondent asserts no other affirmative defense.[4] In his Traverse, Fulton withdraws his first ground, prosecutorial misconduct.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time

---

[3] *Fulton*, 807 N.Y.S.2d at 155-56.

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

of the relevant state-court decision."[6] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9] The Supreme Court has made it clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[12] Fulton "bears the

---

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[12] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[13]

In applying this standard, this Court reviews the last reasoned decision by the state court.[14] In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15] Although pre-AEDPA precedent established that deference is due findings of state appellate courts,[16] the Second Circuit has left the question open with respect to AEDPA cases.[17] In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, *i.e.*, findings of a state appellate court are presumed to be correct.

## IV. DISCUSSION

Fulton argues that the only crime the evidence could have established he committed was intentional murder. Thus, according to Fulton, the evidence was insufficient to convict him of second-degree murder based on a finding of depraved indifference. The Appellate Division rejected Fulton's argument, holding:

> Challenging the sufficiency and weight of the evidence supporting his conviction, [Fulton] contends that because the act was "quintessentially" an

---

[13] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[17] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

intentional act and he was acquitted of intentional murder, the verdict is not amply supported.  This challenge was not properly preserved (*see* CPL 290.10 [1] ).  In any event, the jury could have reasonably found that [Fulton] did not intend to cause the victim's death.  Despite testimony that [Fulton] was overheard saying that he wanted to kill the victim, other evidence revealed that [Fulton's] plan was only to engage the victim and his friends in a fight.  Moreover, [Fulton] did not confront the victim armed with a weapon.  Rather, he came into possession of the bat only after wrestling it from the victim.  From this, the jury could have formulated a valid line of reasoning to conclude that [Fulton] acted with depraved indifference to the victim's plight rather than with an intent to kill.  While *People v. Payne,* 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634 [2004], *People v. Gonzalez,* 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273 [2004], *People v. Hafeez,* 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 [2003] and *People v. Sanchez,* 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204 [2002] guide that depraved indifference murder may not be charged when the conduct reveals an intent to kill, "as a matter of law, a jury is [not] foreclosed from considering a depraved indifference murder charge whenever death is the result of a one-on-one confrontation" (*People v. Atkinson,* 21 A.D.3d 145, 157, 799 N.Y.S.2d 125 [2005]).[18]

Under *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[19]  This Court must, therefore, determine whether the Appellate Division unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the fact finder by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[20]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the

---

[18] *Fulton*, 807 N.Y.S.2d at 157.

[19] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[20] *Jackson*, 443 U.S. at 318-19.

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[21]

Fulton misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[22] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[23] This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction of the crime, as prescribed by state law.[24] Fulton bears the burden of establishing by clear and convincing evidence that the factual findings of the state court were erroneous; a burden Fulton has failed to carry. Here, the Appellate Division, a state court, found that there was sufficient evidence to support conviction of second-degree murder (depraved indifference) under state law. That determination is beyond the purview of this Court in a federal habeas proceeding.

---

[21] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[22] *See Engle v. Isaac*, 456 U.S. 107, 119, 128 (1982); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[23] *Jackson*, 443 U.S. at 324 n.16.

[24] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[25] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[26] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[27] This is especially true where, as in this case, the highest court in the state has denied review of the lower court's decision.[28] A federal court may not issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[29] "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[30]

This Court notes that even if it could reach the merits of Fulton's arguments, Fulton would not prevail. The heart of Fulton's contention is that when he hit the victim, it was an

---

[25] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[26] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[27] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[28] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

[29] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[30] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

intentional act. Under Fulton's hypothesis, since hitting the victim was an intentional act, it could not be reckless, the *sine qua non* of depraved indifference. Fulton's argument is not only circular, but would lead to an absurd result—Fulton would escape punishment for an intentional, criminal act that resulted in the death of another human being.

>The N.Y. Penal Law section at issue herein is 125.25, which provides in relevant part:
>
>A person is guilty of murder in the second degree when:
>    1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:
>        * * * ; or
>    2. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person;

First, Fulton's argument that the evidence would only establish intentional murder disregards the fact that Fulton testified at trial that he did not intend to kill the victim. This, standing alone, is sufficient evidence to negate a finding of intentional murder. As Respondent aptly notes, Fulton's argument is nonsensical because Fulton is essentially arguing that the jury should have disbelieved his testimony. Fulton's argument also ignores the fact that, although the jury could have disbelieved his testimony concerning his intent and inferred from the evidence that Fulton had the requisite intent to cause the death of the victim, it chose not to. This Court cannot say that the contrary inference reached by the jury, *i.e.*, Fulton did not intend to cause the victim's death, was irrational.

Second, the fact that Fulton intentionally hit the victim does not necessarily establish that he intended to cause the *death* of the victim, the *sine qua non* of intentional murder. Fulton's reliance on N.Y. Penal Law, § 15.05[1] is misplaced. As quoted by Fulton, that section provides "[a] person acts intentionally with respect to a result . . . when his conscious objective is to cause

such result . . . ." In this case, the result intended was clearly that the victim be hit, but not necessarily with the intent that it cause death. Fulton cites no authority for his conclusory statement that, if a person commits an intentional act, he cannot be convicted of acting with reckless indifference to the result of that act. Fulton cites no case in which a New York appellate court has held that the mere fact the conduct was an intentional act precluded a finding that the conduct was done with a reckless disregard for the fact that the conduct created a grave risk of death to the intended victim. Nor has independent research by this Court found any such authority. Indeed, a number of the cases Fulton cites involved intentional acts done in a manner that exhibited a reckless disregard for whether the conduct created a grave risk of death to the victim.[31]

Based upon the record before it, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[32] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Carter's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Fulton is not entitled to relief on his second ground.

---

[31] *See, e.g., People v. Mills*, 804 N.E.2d 392 (N.Y. 2003) (deliberate pushing that resulted in death); *People v. Best*, 609 N.Y.S.2d 478 (N.Y.A.D. 1994), *aff'd*, 648 N.E.2d 782 (N.Y. 1995) (repeated beating of a 9-year old); *People v. Poplis*, 281 N.E.2d 167 (N.Y. 1972) (repeated physical beatings of a child).

[32] 28 U.S.C. § 2254(d).

V. CONCLUSION AND ORDER

Fulton is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[33] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[34]

The Clerk of the Court is to enter final judgment accordingly.

Dated: June 11, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[33] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[34] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.